PERKINS *vs.* REEDS, ADMINISTRATOR of NASH.

1. In covenant, the declaration should state a covenant of the defendant to the plaintiff.

2. The court adhere to the decision made in Ellett *vs.* Bobb, (6 Mo. Rep., 324,) that where a person hires a slave for a certain time, and agrees to return the slave at the end of that time, and the slave, in the mean time, runs away, without the fault of the hirer, who has used due diligence to prevent the escape, and retake the slave, but without success, he will only be liable for the hire, and not for the return of the slave.

ERROR to Lincoln Circuit Court.

Wells, *for Plaintiff in Error.*

Campbell, *for Defendant in Error.*

Tompkins, *Judge, delivered the opinion of the Court.*

Gabriel Reeds, Administrator of Gabriel P. Nash, brought his action of covenant against Walton Perkins and Lewis H. Wren, in the Circuit Court of Lincoln county, and judgment being given for him there, Walton Perkins now prosecutes his writ of error in this Court.

The declaration states, that, for that whereas, &c., the defendants made their certain writing obligatory in the words following, viz.:—

"Twelve months after date, we bind ourselves to pay Gabriel Reeds, Administrator, &c., the sum of two hundred dollars, for the hire of Luke and wife and child, belonging to said estate, for the term of one year from the date hereof, and

to furnish, &c., and to return said slaves to said administrator, &c.—Given under our hands and seals, &c., and signed and sealed by Lewis H. Wren and Walton Perkins."

The declaration concludes with an averment that the slaves were delivered, but that Luke, one of the slaves, had not been returned, &c.

To this declaration, the defendant Perkins pleaded—

1st: *Non est factum*, without an affidavit.

2d: That he did return the said slave, Luke.

On these pleas, issue was joined. The defendant further pleaded, that after the hiring and before the time of the delivery of said slaves, the said slave Luke, without any default or negligence, &c., did escape and ran away, and cross the Mississippi river, into the state of Illinois, averring fresh pursuit and diligent search, &c.

The defendant further pleaded, that he hired said slave Luke to one Hough, and said slave ran away from said Hough, with like averments as in the preceding plea. To these two pleas, a demurrer was filed and sustained; a trial of the issue joined on the two first pleas was had, and verdict and judgment was given for the plaintiff.

The defendant moved in arrest of judgment, and his motion being overruled, he brings his case here by a writ of error.

The declaration is clearly defective, because it states no covenant of the defendant to the plaintiff.

It states, that the defendants, Wren and Perkins, made their certain writing obligatory in the words, &c., following, &c., but this for any thing appearing on the record, might even have been burnt up, or not delivered.—See the case of Muldrow *vs.* Tappan, 6th vol. Mo. Decisions, 277, and authorities there cited.

There it is said, that the declaration must aver or assert a promise on its face, or must contain words equivalent to a promise. The judgment ought then to have been arrested.

The defendant in the Circuit Court, appellant here, in support of his pleas, relies on the case of Ellett *vs.* Bobb, 6 Mo. Dec., 324, and the authorities by the counsel for the defendant in error in that case. The counsel for the defendant in error considers the decision of the court, in the case of Ellett *vs.* Bobb, so opposed to the principles of the law, as established by authorities and legal decisions, and so contrary to the sound policy of the country, and so dangerous to the rights of minors and orphans, that he feels confident the Court will reconsider the question, and establish the true principle of law in relation to that subject. He relies on the current of common law authorities, and judicial decisions on the subject of bailment and contracts, and, more particularly, the decisions in relation to rented property consumed by fire during a lease, where there is an express covenant to repair.

He contends, that the case of a hired slave is even stronger than that of leased property, because the person to whom the slave is hired becomes, during the year of hiring, the owner and master of the slave; on him devolves the whole duty, during that time, of treating the slave in such a manner as to avoid the temptation

to run off; to guard, watch, and restrain him, so as to prevent his escape; to prevent improper associations with free negroes, and white persons of bad character, that would be likely to persuade him to run away. He has also the power to remove him from such places as afford facilities for a slave to escape; he has the power, by kind treatment, to prevent a slave from running away.

The plaintiff, as administrator, is compelled by law to hire, without the chance of selecting a master for the slave; and therefore, it is said, policy requires the person hiring to be bound in all courts for the return of the slave : if the slave be cruelly treated, the administrator, or other person, cannot restrain the bailee.

In like manner, if the slave be kept working on the bank of the Mississippi, or on an island of the same, in sight of a free State, (non-slave-holding State, I suppose, is meant,) with all the temptations to escape before him, and all the facilities for effecting such escape, the guardian, &c., cannot prevent this state of things.

Now, there is nothing more plain and obvious, if there be any good reason why a person hiring a slave should not be answerable for the return, under a covenant like this copied into the declaration, than that the plaintiff might either deny the truth of the plea, or that many of the circumstances here suggested by the ingenuity of counsel might be replied in bar to the plea. The case of Boyce *vs.* Anderson, 2 Peters, 150, was an action in the court below, against the defendants in error, owners of the steamboat Washington, to recover from them the value of four slaves, the property of the plaintiff, who, he alleged, were drowned by the carelessness, negligence, or mismanagement of the captain and commander of said steamboat. The late Chief Justice Marshall, delivering the opinion of the court, said : " There being no special contract between the parties in this case, the principal question arises on the opinion expressed by the court, that the doctrine of common carriers · does not apply to the case of carrying intelligent beings, such as negroes.

" That doctrine is, that the carrier is responsible for every loss not produced by inevitable accident. It has been pressed beyond the general principles which govern the law of bailment by considerations of policy. Can a sound distinction be taken between a human being, in whom another has an interest, and inanimate property?

" A slave has volition and has feelings which cannot be entirely disregarded. These properties cannot be overlooked in conveying him from place to place. He cannot be stowed away as a common package. Not only does humanity forbid the proceeding, but it might endanger his life or health.

" Consequently, this rigorous mode of proceeding cannot safely be adopted, unless stipulated for by special contract. Being left at liberty, he may escape; the carrier has not, and cannot have, the same absolute control over him that he has over inanimate matter. In the nature of things, and in his character, he resembles a passenger, and not a package of goods. It would seem reasonable, therefore, that the responsibility of the carrier should be measured by the law which is applicable to passengers, rather than that which is applicable to the carriage of common goods."

In the spirit of the language above quoted, it may be said, in answer to some

part of the ingenious argument of the plaintiff's counsel, that Perkins could not have the same absolute control over the hired negro that a lessee of a house has over that inanimate property. He might have subjected himself to an action of trespass on the case, for cruel treatment.

I will add, that if the case of Ellett *vs.* Bobb were one of the first impression, I would now give my support to the rule there laid down.

But the authority of the case of the Supreme Court of the United States, though as much in point as any, is not the only one on this subject; for, let it be recollected, that this bailee of the slave here sued for did not make a contract with the administrator of Nash more binding than the law makes for the common carrier.

At page 154, the same writer (Wheeler) refers to two cases, viz., Keas *vs.* Yewell, 2 Dana, 348, and Singleton *vs.* Carroll, 6 J. J. Marshall, 528, in which the same doctrine is established.

This is the statement of the case of Keas *vs.* Yewell: Yewell filed a bill against Keas to foreclose a mortgage, and upon an order of the court, Keas gave a bond to have the slaves forthcoming to answer the decree. Upon the final decree, one of the slaves not being forthcoming, according to the bond, Yewell sued Keas and his sureties on the bond. The defendant pleaded, that the slave ran away between the execution of the bond and the rendition of the decree, and that they could not reclaim her. Verdict and judgment for plaintiffs, and the defendant brought error.

"*Per curiam* — Nicholas, Judge.— In our estimation, the plea constitutes a valid defence to the action. The casualty by which the slave is lost is a peril incident to the very nature of such property, and therefore, in contracts and covenants concerning such property, that peril should never be presumed to have been intended to be guarded against, unless so expressly stipulated. It has, accordingly, been held by the Court of Appeals in Virginia and by this court, that the hirer of a slave was excused, by the fact of the slave having run away without his fault, from his covenant to return the slave at the end of the year. In Singleton *vs.* Carroll, the covenant of the hirer was as express, unambiguous, and unconditional as that of the parties here.

"The same principle which exempted the hirer from responsibility there, must relieve the obligors in this bond also.

"The principle is laid down in that case, that this loss is not to be considered as provided against by a general covenant, and its happening, therefore, presents the same excuse for non-performance that the death of the slave would have done.

"We therefore think that the court erred in sustaining the demurrer to this plea."

This Court, therefore, feels no hesitation in adhering to the decision made in the case of Ellett *vs.* Bobb; and therefore it is the opinion of the Court, that the pleas of the defendant, which were demurred to in the Circuit Court, are good. Its judgment is therefore reversed, and the cause will be remanded, and the plaintiff have leave to amend his declaration if he desire to do so.