WARREN KING, RESPONDENT, v. JOHN SPITCAUFSKY ET AL., APPELLANTS.

Kansas City Court of Appeals. May 26, 1930.

· *Wm. B. Dickinson, Alfred D. Hillman* and *Martin B. Dickinson* for respondent.

*Watson, Gage & Ess* for appellants.

ARNOLD, J.—This is an action in damages based upon an alleged breach of contract of bailment.

The facts of record are that plaintiff was the owner of a certain steam shovel, boiler and equipment; the defendants were a partnership doing business under the name of Spitcaufsky Brothers, at Kansas City, Missouri, and at the time of the occurrence giving rise to this action, were engaged in excavating what is known as the Main street cut, just south of the present Union Station in Kansas City, Missouri, extending from 24th to 27th streets in said city. On November 17, 1914, plaintiff and defendants entered into the following contract in writing, to-wit:

"Second parties agree that they are well and personally acquainted with the present condition of the steam shovel, boiler and machinery belonging to Warren King, and that said steam shovel, boiler and machinery has been in the possession of second parties and has been worked and used by second parties for more than two weeks prior to the signing of this contract.

"It is therefore agreed that second parties hereby hire said steam shovel, boiler and machinery from Warren King in its present condition and agree to pay therefor from this date at the rate of one hundred dollars per month, payable monthly in advance, at the signing of this contract, and on the seventeenth day of each and every month thereafter so long as second parties desire to retain said steam shovel, boiler and machinery. It is further hereby agreed that second parties shall have the use of said steam shovel, boiler and machinery as long as second parties desire to retain it, provided second parties shall pay one hundred dollars per month in advance for the retaining of the same on the seventeenth day of each month hereafter.

"Second parties agree to keep said steam shovel, boiler and machinery in good working condition and make all reasonable and necessary repairs on said steam shovel at their expense, and at the termination of this contract, to return the same in good working condition to said Warren King at a place to be designated by Warren King, in Kansas City, Missouri.

"It is the intention of the parties hereto that on the return of the shovel, boiler and machinery, it shall be in good working condition, but not that any parts which are worn in ordinary use and care shall be replaced so long. as said parts shall remain in good working condition.

"The receipt of one hundred dollars from Spitcaufsky Brothers by Warren King, is hereby acknowledged.

"In witness whereof, the parties hereto have executed this contract in duplicate this 17th day of November, 1914.

"(Signed)   WARREN KING;
"SPITCAUFSKY BROS.
"By JOHN SPITCAUFSKY."

Under the terms of this contract the steam shovel was taken into possession of defendants during the month of November, 1914, and was moved by them to the Main street cut, as above stated, where defendants were engaged in excavating work. On November 17, 1914, the rent for the shovel was paid by defendants for the period ending December 17, 1914, and on the last-named date the rent was paid for the period ending January 17, 1915. The evidence discloses the Main street cut was very deep, practically into solid rock and that on each side thereof, at the time in question, there was an embankment seventy to eighty feet in height, composed principally of rock.

On the night of January 1, 1915, while said steam shovel was resting at a place in the cut where the excavating had been completed, and for some reason not apparent in the record, a ledge of rock, apparently safe, gave way, slid, fell upon and completely demolished said steam shovel, rendering it junk, worthless and not repairable. Plaintiff brought this action to recover the value of said steam shovel.

The petition alleges that said defendants failed and refused to make reasonable and necessary repairs on said steam shovel at their own expense, and to return same to plaintiff in good working condition at a place to be designated by him as provided in the contract; that plaintiff has demanded and requested of defendants that they repair his said steam shovel, boiler and machinery and keep the same in good working condition, and has further demanded that the sum of $75 previously loaned by defendants to plaintiff be applied on the rent from January 17th to February 17, 1915, and that defendants pay the balance of the rent in cash, but that defendants have failed and refused to repair said steam shovel, boiler and machinery, and to keep the same in good working condition, and have failed and refused to deliver to plaintiff his note for the $75 given defendants by plaintiff for the loan of this amount and to apply same on the rent and pay the balance in cash.

The petition alleges damages in the sum of $100 for refusal to pay said rent; and that plaintiff is damaged in the sum of $3000 "by the refusal of defendants to repair his said steam shovel, boiler and machinery and keep the same in good working condition;" that before the same was delivered to defendants it was of the reasonable value of $3000, and would now be of such value if repaired and kept in good working condition, and that "in its present condition it is of no value whatever." Judgment is asked in the sum of $3100. The contract is made a part of the petition by reference.

The answer was a general denial. The cause was tried to a special judge and a jury, and resulted in a verdict for plaintiff signed by nine jurors, in words and figures as follows:

"We, the undersigned jurors find the issues for the plaintiff and do assess his damages at $3000, with interest at six per cent per annum from February 2, 1915."

Based upon said verdict, the court rendered the following judgment:

"Wherefore, it is ordered and adjudged by the court that the plaintiff do have and recover of and from defendants, and each of them the sum of $3000, with interest thereon from February 2, 1915, amounting to $2485, or a total amount in all of $5485, together with his costs and charges herein expended, and have therefor execution."

Timely motions for a new trial and in arrest of judgment were overruled and defendants have appealed.

Three assignments of error are presented: (1) The court erred in refusing to give defendants' instruction in the nature of a demurrer at the close of plaintiff's evidence, and renewed at the close of all the evidence; (2) in giving plaintiff's instruction No. 2, and (3) in overruling defendants' motions for a new trial and in arrest of judgment.

In considering the first of these charges it is noted the record discloses that while defendants asked an instruction in the nature of a demurrer at the close of plaintiff's case, which was overruled, they failed to stand on their demurrer but proceeded to introduce evidence on their own behalf, thereby waiving the demurrer. In their reply brief defendants concur in this well-established rule and state the demurrer offered at the close of all the evidence is the only one to be considered. Taking up the question as to whether that should have been sustained, we are mindful of the rule that plaintiff's evidence must be considered as true and all reasonable inferences to be drawn from defendant's evidence be resolved in plaintiff's favor.

There is little dispute as to the material facts and these are fairly set out in the foregoing statement. Plaintiff asks recovery upon the ground that defendants had failed and refused "to make reason-

able and necessary repairs on said steam shovel at their own expense and return the same to Warren King in good working condition at a place to be designated by Warren King in Kansas City, Missouri,'' as provided in the contract. The petition does not charge negligence or carelessness on the part of defendants, but counts solely on the contract in evidence especially the part reading:

''Second parties agree to keep said steam shovel, boiler and machinery in good working condition and make all reasonable and necessary repairs on said steam shovel at their own expense, and at the termination of this contract, to return the same in good working condition to said Warren King at a place to be designated by Warren King in Kansas City, Missouri.

''It is the intention of the parties hereto that on the return of the shovel, boiler and machinery, it shall be in good working condition, but not that any parts which are worn in ordinary use and care shall be replaced so long as said parts shall remain in good working condition.''

That the steam shovel was completely demolished is undisputed. Plaintiff testified that when he saw it after the slide it had no value except as junk and as to this, defendants agree. Defendants urge that the pleadings and evidence standing as they do, there was error in submitting the case to the jury. In support of their contention we are cited to cases *ex delicto*, so tried and considered. As in the case of McEvers v. Steamboat, 22 Mo. 187, the question here is, was the risk within the engagement of defendant so that no matter how the loss occurred, the defendants are bound. The facts in that case were the defendant rented a barge from plaintiff for hire and agreed to return it at any time on reasonable notice, ''and to deliver it in good order, usual wear and tear excepted.'' Afterwards and before delivery the barge was destroyed by an overpowering force of ice in the Mississippi River, without any fault of defendant. The action was instituted upon contract to recover for the value of the barge on the ground that defendant had failed to deliver ''in good order, wear and tear excepted.'' In the opinion in that case the Supreme Court said (l. c. 191):

''The question here then is, was the risk within the engagement of the defendant so that no matter how the loss occurred, the party is bound, and we think it was not. Here is a general undertaking to return the property in good order, and it has perished without any fault on the part of the defendant by a natural force which could not be resisted, and we are of opinion that an undertaking to assume such a risk ought to be special and express, and so clear as not to admit of any other construction. Such is not the case here.''

In that case it is noted the only covenant in the contract was to deliver ''in good order, wear and tear excepted.'' The action was on

a contract and the defense of destruction by an overpowering force was specially pleaded, and the court held the bailee was released from returning the property. Such a plea in defense was not made in the case at bar. It has been held that an affirmative defense to an action on a contract must be pleaded. [Reynolds v. Reynolds, 45 Mo. App. 622; Wilkerson v. Farnham, 82 Mo. 672; 13 C. J. 36, sec. 873, note 72a.] Defendant's only plea was a general denial and they were not entitled thereunder to such affirmative defense as impossibility to perform the contract. In the cases cited by defendants, such a special plea was made and therefore those cases do not apply. This court said in Redel v. Stone Co., 126 Mo. App. 163, 168, 103 S. W. 568, 569:

"In borrowing the article defendant impliedly agreed to return it in the condition it was when received, and its failure to perform that undertaking constitutes a breach of contract on account of which an action *ex contractu* may be maintained." [See also Freeman v. Foreman, 141 Mo. App. 359, 125 S. W. 524.] In the case of Cochran v. Walker (Tex. Civ. App.), 49 S. W. 403, wherein plaintiff alleged bailment and failure to return a jack, and defendant said the jack had been killed. In that case as in this, the answer was a general denial. On appeal the court held the proof of bailment and nondelivery made a prima-facie case which, under a general denial, could be met only by proof the jack never was delivered to the defendant, or that it had been redelivered to plaintiff. The court further held testimony that the jack had been killed without fault of defendant was not properly admitted under a general denial. We hold, under the pleadings in the case at bar, the trial court was not in error in refusing defendants' instruction in the nature of a demurrer at the close of all the evidence.

However, under the general denial, defendants were properly allowed to introduce testimony tending to prove redelivery of the steam shovel to plaintiff. The testimony of both defendants was that plaintiff called at the cut on December 31, 1914, and there was informed that defendants had finished with the shovel. Being asked where he desired it delivered, plaintiff told them to leave it where it was; that he was looking for other work where it could be used. In this testimony defendants were corroborated by their engineer who had operated the shovel and who also testified the boiler was cleaned out and the shovel left at the point in the cut designated by plaintiff. The testimony of plaintiff refutes these statements but, at first, his language was a bit uncertain though he finally stated positively no such conversation occurred. The question of delivery of the shovel therefore was an issue for the jury.

Defendants urge the court erred in giving plaintiff's instruction No. 2, as follows:

"The court instructs the jury that if you find and believe from the evidence that the defendants entered into the contract offered in evidence with the plaintiff, and retained and used his steam shovel, boiler and machinery therein described, and if you further find and believe from the evidence that said steam shovel, boiler and machinery was on or about the first day of January, 1915, while in the possession of the defendants under the contract, offered in evidence, crushed and rendered useless by the falling of a great mass of earth and rock upon said steam shovel, boiler and machinery, and if you further find that the plaintiff has demanded and requested that defendants repair said steam shovel, boiler and machinery in good working condition, and if you further find that the defendants have failed and refused to repair said steam shovel, boiler and machinery and keep the same in good working condition, then your verdict will be for the plaintiff, and you will assess his damages at a sum equal to the reasonable cash value of plaintiff's said steam shovel, boiler and machinery at the time of and just before the injury, less the reasonable cash value, if any, of said steam shovel, boiler and machinery, after the injury, and you may add interest thereon at the rate of six per cent per annum from February 2, 1915."

It is insisted the instruction is erroneous because, in effect, it told the jury that defendants were insurers of the safety of the steam shovel, under the contract, and were bound to return it to plaintiff irrespective of their reason for failing to return it; that the gist of the instruction is that the jury should find for plaintiff if they found the steam shovel "while in the possession of defendants, under the contract offered in evidence, was crushed and rendered useless by the falling of a great mass of earth and rock upon said steam shovel," and requiring them also to find that plaintiff had requested defendants to repair the shovel and put it in good working condition, and that defendants had failed and refused to do so.

It is urged the instruction did not require the jury to find any negligence on the part of defendants, when such was not the undertaking or obligation under the contract; but that the return of the shovel was excused when the shovel was demolished by irresistible force, to-wit, the falling of the ledge of rock which occurred without negligence on the part of defendants, and as to negligence, there is neither allegation nor proof.

We think we have shown in what has been said that the reason for this objection is untenable. The question of negligence was not raised by the pleadings, was not an issue and may not be raised now. The contract is plain, unambiguous and absolute in its terms. If it were only a contract to return the shovel in good working order, save ordinary wear and tear as in the steamboat case, and

properly pleaded, yet the burden of proof of loss, without their fault, would be on defendants. [Corbin v. Cleaning & Dyeing Co., 181 Mo. App. 151, 167 S. W. 1144.] We rule this point against defendants.

Finally, it is urged the court erred in entering the judgment as it did, and that defendants' motions in arrest and for a new trial should have been sustained. In both motions the point was raised that the court was in error in calculating interest and including the amount of interest in the judgment. The verdict read:

"We, the undersigned jurors, find the issues for plaintiff and assess his damages at $3000 with interest at six per cent per annum from February 2, 1915."

The rule is well established in this State that in actions to recover money only, and there is a general verdict finding for the plaintiff. the jury shall determine the amount of the recovery. In the case at bar the court calculated the amount of the interest in accordance with the finding of the jury and added this to the principal sum of $3000, entering judgment for $5485, and this action of the court is assigned as error.

In this position defendants are correct. The last pronouncement of the Supreme Court on this subject is found in Mercantile Trust Co. v. Dulle, 282 S. W. 414, 416, in which case the trial court instructed the jury to find for respondent in the sum of $180,250, and interest thereon at six per cent to the date of the trial, amounting to $6,068.42, making a total amount of $186,318.42. This the jury did and the appellants contended it was error for the court to give such an instruction. The opinion holds:

"Since the case of Cates v. Nickell, 42 Mo. 169, was decided in 1868, this court and the Courts of Appeals have quite uniformly held that the provisions of what is now section 1423, Revised Statutes 1919, requiring the jury to determine the amount of the recovery in all actions for money only, are violated when the court calculates the amount of the interest and directs the jury to return its verdict in that amount. [See Burghart v. Brown, 60 Mo. 24; Bradley-Metcalf Co. v. Tootle-Campbell Dry Goods Co. (Mo. App.), 180 S. W. 389; Dawson v. Wombles, 86 S. W. 271, 111 Mo. App. 532; Kroge v. Modern Brotherhood of America, 105 S. W. 685, 126 Mo. App. 693; Johnson v. Grayson, 130 S. W. 673, 230 Mo. 380, l. c. 407; Boutross v. Miller (Mo. Sup.), 223 S. W. 889.]

"The soundness of this rule has sometimes been questioned, but has been quite consistently followed. It seems to the writer of this opinion that there is no reason for the application of section 1423 to actions upon notes and bonds where there is no question concerning the amount due and where the amount of interest is merely a matter of calculation. On its face the language of the statute includes all

actions for money only. There appears to be a sound basis for the contention that the statute was only intended to apply to actions for money only where the amount of recovery is not susceptible of mathematical determination. We will not undertake to go into that matter here. The rule has been well established so far as adjudicated cases can establish a rule. Upon the authority of said cases, this instruction must be held erroneous.''

We agree with the learned writer of that opinion in his conclusions. We fail to see the common sense of the rule, but it is the law and we must follow it. Under the rule, the trial court clearly was without right to compute the interest and include it in the judgment entered. But, as suggested by the court in the Dulle case, the error can be cured by *remittitur*. [Bradley-Metcalf Co. v. Dry Goods Co. (Mo. App.), 180 S. W. 389; Kroge v. Brotherhood, 126 Mo. App. 693, 103 S. W. 685.] Therefore if, within ten days from the filing of this opinion, plaintiff shall remit the sum of $2485, the judgment will be affirmed; otherwise it will be reversed and the cause remanded for a new trial. *Bland, J.*, concurs; *Trimble, P. J.*, absent.