**H. Donald NUELL, Plaintiff-Appellant,**

v.

**FORTY–NORTH CORPORATION,**
**Defendant-Respondent.**

**No. 30959.**

St. Louis Court of Appeals.

Missouri.

June 12, 1962.

Leritz & Leritz, Joseph L. Leritz, J. D. Leritz, St. Louis, for plaintiff-appellant.

Donald J. Meyer, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

This is an action to recover damages for an alleged breach of a contract of bailment of an automobile. A trial before the court without a jury resulted in a judgment for defendant, from which the plaintiff has appealed.

In his second amended petition, upon which the case was tried, plaintiff alleged that defendant operated a restaurant located on the premises of the Montclair Apartments in St. Louis, open to the general public, and known as the Frontier Room; that defendant also owned and operated a parking lot on the premises of the Montclair Apartments, and that customers and patrons of the Frontier Room restaurant were permitted to park their automobiles on defendant's parking lot without further payment; that on June 7, 1958, plaintiff, intending to patronize defendant's restaurant, delivered his automobile to defendant to be parked and stored on defendant's parking lot; that defendant "impliedly agreed to park and store said automobile while plaintiff patronized the Frontier Room Restaurant and thereafter to return said automobile to plaintiff"; and that thereafter plaintiff made a demand upon defendant for the return of his automobile "but that defendants, in breach of their aforesaid agreement, failed and refused and still fail and refuse to return said automobile." (The plural was used because a co-defendant, subsequently dismissed, was joined.) Plaintiff prayed for damages of $2500 as the value of his car and for his deprivation of its use.

Defendant answered, admitting that it owned and operated the Frontier Room, and the parking lot for the use of its customers and patrons; alleged that "customers and patrons of The Frontier Room Restaurant were given the right, subject to the restrictions, limitations and conditions published and posted on said lot and printed on tickets given to each customer or patron using the lot, to park their automobiles thereon without payment"; denied that "plaintiff delivered said automobile to this defendant for a consideration to be parked and stored on said lot"; denied that defendant impliedly or otherwise agreed to park and store said automobile and to return same; denied that defendant failed and refused to return said automobile in breach of any agreement with plaintiff; and denied, generally, that defendant failed and refused to return defendant's automobile, the value thereof, and plaintiff's loss of use. Further answering, defendant alleged that if plaintiff did, in fact, park his automobile on defendant's lot, he did so subject to the restrictions, limitations and conditions published and posted on said lot, and printed on the ticket given to plaintiff "including the express condition that the operator of said lot assumed no responsibility for loss by theft or otherwise of said automobile"; and that the loss, if any, of said automobile was not occasioned by the breach of any duty owed by the defendant.

The restaurant owned and operated by the defendant was located in the Montclair Apartments, which was situated in the City of St. Louis, on the east side of Kingshighway Boulevard, in the block between Laclede Avenue on the north and Forest Park Boulevard to the south. The parking lot owned and operated by the defendant for the accommodation of its customers and patrons occupied a plot adjacent to and south of the Montclair, on the northeast corner of Kingshighway and Forest Park. Besides the building, to the north, the lot was enclosed by low concrete or brick walls on the remaining three sides. The principal entrance and exit, about 15 to 18 feet wide, was on the west or Kingshighway side. However, the building did not extend eastwardly to the eastern property line, so that from that end of the lot it was possible to drive northwardly, across a paved area in back of the building, and reach an L shaped public alley, one arm of which ran north to Laclede, and the other

eastwardly. According to defendant's evidence, the lot was approximately 135 feet from east to west, and about 105 feet from north to south, and was lighted by eight light standards, and by lights over the doorway to the building, located on the south side thereof.

Plaintiff's evidence was that about 7:00 P.M., on June 7, 1958, accompanied by his wife and another couple, he went to the Frontier Room for dinner. He had been to defendant's restaurant and his car had been parked for him on defendant's lot on previous occasions, and defendant was familiar with the fact, admitted by defendant, that patrons were requested to leave the keys in their cars, so that the attendants could not only park them, but in order that the attendants could move them from time to time to permit the ingress or egress of other cars. The ignition switch on plaintiff's car, a 1956 Chevrolet sedan, was so constructed that in one position the motor could be started without the use of a key. As plaintiff drove up and stopped in front of the entrance-way to the Montclair, a parking lot attendant came up to the car. Plaintiff turned the ignition switch to the "on" position, removed the key, and turned the car over to the attendant. The attendant gave plaintiff a ticket or claim check, got in the car, and drove it away. Plaintiff put the ticket in his pocket without reading it. Having concluded dinner, and having had the ticket stamped in the restaurant, plaintiff and his party proceeded to the parking lot, at what plaintiff said was about 10:00 P.M. Plaintiff gave the ticket to the parking lot attendant, who looked for the car and subsequently informed plaintiff that he was unable to find it. The automobile was never returned to plaintiff, nor had it been located at the time the case was tried. Plaintiff testified that he paid $2150 for the car in December 1955, as a new automobile, and that in his opinion its value at the time of its disappearance was between $1400 and $1500.

Defendant's principal witness was Marion Tillard, who testified that he had been in charge of defendant's parking lot on June 7, 1958, having gone on duty at 5:00 P.M. and having left at 1:30 or 2:00 A.M. of the following morning. Between the hours of 6:00 and 10:00 P.M. he had been assisted by a co-worker, Charles Bowen. Tillard testified that the normal procedure in handling cars was for the attendant to take the automobile from a customer at the entrance-way to the Montclair, give the patron a ticket, and drive the car to a parking place. He stated that customers were requested to leave the keys in their cars, because the automobiles frequently had to be "jockeyed" around on a busy and crowded night, and that the attendants left the keys in the cars. Some cars were parked in a row near the entrance on Kingshighway and it was possible to drive them right out the exit without moving other cars. No chains or barricades were maintained on the exits while the lot was in operation. On crowded nights, some cars were also parked in the area in back of the building, but in that event the cars were locked and the keys removed. Cars were not delivered to anyone unless he produced a ticket. Tillard identified the ticket introduced by plaintiff as a ticket used by defendant. He could not remember whether he had parked plaintiff's car, but recalled that plaintiff asked for his automobile, and that he had looked and couldn't find it. He fixed the time at 11:30 P.M. Tillard testified that he had seen no one on the lot on the night in question, other than customers and Bowen, that no loitering was permitted, that he or Bowen was present on the lot at all times; and that the "only occasion we would have to leave the lot is emergencies or sometimes if weather is very inclement to get some hot coffee."

Printed on the ticket given plaintiff were the words:

"THE MONTCLAIR
Parking Lot is for exclusive
use of patrons of
Frontier Room—11 A.M. to closing."

And in much smaller print: "No responsibility is assumed for articles left in car, nor

for loss by theft or fire, nor for damage to car or any part thereof. All cars parked and moved at their owners' risk. Cars left on lot at closing will be move to street and keys left in Montclair Lobby." Tillard also identified certain pictures of the parking lot, and stated that a sign which appeared in some of them was on display on June 7, 1958. In addition to stating that the lot was for the exclusive use of patrons of the Frontier Room, the sign read: "All cars parked & moved at owner's risk. Not responsible for loss or damage to cars or property therein." Plaintiff testified he could not recall seeing any sign on the parking lot. Defendant did not produce Bowen as a witness, nor give any reason or explanation for its failure to do so.

In his findings of fact and conclusions of law, delivered orally immediately upon the close of the evidence, the trial court found that the plaintiff had delivered his automobile to the defendant, and that the relationship of bailor and bailee had arisen between them; that the defendant had failed to redeliver plaintiff's car to him; that the defendant as bailee was under the duty to use ordinary care, but was not an insurer; that the responsibility ordinarily assumed by a bailee had been restricted by the defendant; that the car was not lost or taken away or in any way destroyed or damaged by an act of defendant as bailee; and that "There is no showing by the plaintiff that the failure to redeliver was caused through any default, negligence or miscarriage on the part of this bailee, as the defendant."

■ Defendant filed no brief in this court, and we are without the benefit of its views regarding plaintiff's contentions on appeal. The first of these is plaintiff's argument that his action was one for breach of the contract of bailment; that by its answer defendant denied the making of the contract and the delivery of the car to it; that the defendant did not plead any exoneration of its failure to redeliver

the car; and that defendant's position below, that the car was stolen from its parking lot, was inconsistent with its answer because it was not pleaded as an affirmative defense, citing King v. Spitcaufsky, 224 Mo.App. 923, 28 S.W.2d 433 and Walters v. Adams Transfer & Storage Co., 235 Mo.App. 713, 141 S.W.2d 205. What plaintiff overlooks, however, is that in the alternative defense pleaded in its answer defendant set up two affirmative defenses: (1) That if there was a contract of bailment, it was restricted and limited by the restrictions, limitations, and conditions posted on the parking lot and printed on the ticket given plaintiff; and (2), that the loss, if any, was not occasioned by the breach of any duty owed by defendant to plaintiff. While general in terms, the latter was a plea of exculpation. As indicated in its findings of fact and conclusions of law, the trial court held in defendant's favor on both of these affirmative defenses.

■ The plaintiff argues further that the trial court erred in ruling that the contract of bailment was restricted by the attempted limitation and restriction printed on the claim ticket and posted on the sign. There was no evidence that when plaintiff delivered his automobile to the parking lot attendant, and received in return the ticket or claim check, plaintiff's attention was called to the restrictions and limitation on the ticket or the sign. In fact, the testimony of defendant's witness Tillard would indicate that it was not the practice to do so. Plaintiff testified that he put the ticket in his pocket without reading it, and that he did not recall seeing any sign. In 6 Amer.Jur., Bailments, Sec. 179, pgs. 297–298 it is said: "Although there is authority apparently to the contrary, the trend of the more recent authorities is to the view that receipt from the bailee at the time of the bailment of what is ostensibly a token for later identification of the bailed property does not bind the bailor as to provisions, purportedly limiting the bailee's liability, which are printed thereon, where

his attention is not called to them and he has no actual knowledge at the time of the bailment that they are supposed to become part of the contract." This rule has long been recognized and adopted in Missouri. Brown v. Hines, 213 Mo.App. 298, 249 S.W. 683. A similar principle applies to signs posted on the premises to which the bailor's attention is not called, and of which he has no knowledge. 6 Amer.Jur., Bailments, Sec. 179, p. 297; 8 C.J.S. Bailments § 26, p. 266. Since there was no evidence that plaintiff's attention was called to the provisions printed on the ticket and appearing on the sign, or that plaintiff ever knew of and agreed to such provisions, we are of the opinion that the trial court erred in ruling that the defendant's responsibility and liability under the contract of bailment was restricted and limited by such provisions.

Plaintiff also contends that the cause of action pleaded in his petition was one for the breach of the contract of bailment; that he proved the breach when he showed that the defendant failed to return his automobile on demand; and that the trial court erred in rendering judgment for the defendant because the defendant adduced no evidence to excuse or justify its breach of the contract. Plaintiff goes further, and argues that defendant's own evidence disclosed, in fact, that the defendant had not exercised ordinary care to protect plaintiff's automobile.

 There are numerous definitions of the term "bailment." 6 Amer.Jur., Bailments, Sec. 4, p. 177; 8 C.J.S. Bailments § 1, p. 222. "The term signifies a contract resulting from the delivery of goods by bailor to bailee on condition that they be restored to the bailor, according to his directions, so soon as the purposes for which they were bailed are answered." Samples v. Geary, Mo.App., 292 S.W. 1066, 1067. In the absence of a statute, or an express agreement enlarging or restricting his liability, the relative degree of care which a bailee is required to exercise in safeguarding the bailor's property is dependent upon the kind and classification of the bailment. 6 Amer.Jur., Bailments, Sec. 171, p. 289. Here defendant concededly operated its parking lot and stored the automobiles of its customers and patrons as an incident to the conduct of its restaurant, obviously because of the profit and benefit which defendant anticipated would accrue to it through their patronage of its establishment. While defendant made no direct charge for such parking, the indirect consideration which inured to it by reason of such patronage resulted in the bailment being one for the mutual benefit of both parties. 8 C.J.S. Bailments § 8, p. 244; 6 Amer.Jur., Bailments, Sec. 20, p. 185; Scherrer v. Plaza Bowl Invest Co., Mo. App., 277 S.W.2d 695; Johnson v. Hanna, 78 S.D. 324, 101 N.W.2d 830; McDonald v. Leonard Bros., Tex.Civ.App., 134 S.W. 2d 460. Where such a contract of bailment arises by implication, as here, the degree of diligence which the bailee must exercise is that of ordinary care. McKnight v. Batrick, Mo.App., 49 S.W.2d 277; Commercial Electrical Supply Co. v. Missouri Commission Co., 166 Mo.App. 332, 148 S.W. 995. However, a bailee for the mutual benefit of both parties is not an insurer, and he may exculpate his failure to return the property to the bailor by showing that its loss or damage was not due to his failure to exercise ordinary diligence, but was due to an inevitable accident, commonly called an act of God, or to an overpowering and irresistible force, as a hostile army. Story on Bailments, Sec. 25, p. 25. Robbery by force is classed by that authority as an irresistible force, but mere theft is not. Story, Sec. 27, p. 27. And see McEvers v. The Sangamon, 22 Mo. 187; Halyard v. Dechelman, 29 Mo. 459; Clark v. Shrimski, 77 Mo.App. 166.

 There can be no doubt that in the instant case plaintiff pleaded a cause of action based on breach of the contract of bailment. After alleging that defendant impliedly agreed to park and store his automobile while he patronized the Fron-

tier Room and to thereafter return it to him, plaintiff pleaded that defendant, in breach of its agreement, failed and refused to return his car. Some confusion appears to have arisen regarding which party carries the burden of proof when the bailor's action is bottomed on a breach of the contract of bailment, rather than on negligence. See Oliver Cadillac Co. v. Rosenberg, Mo.App., 179 S.W.2d 476, 480. The correct rule seems to be that if the bailor merely pleads the bailee's breach of the contract by failure to redeliver, and does not allege want of due care or of negligence on the part of the bailee, the burden of proof is on the bailee to excuse or explain his failure to return the property. Stanard Milling Co. v. White Line Central Transit Co., 122 Mo. 258, 275, 26 S.W. 704; Goodfellow's Executors v. Meegan, 32 Mo. 280; Freeman v. Foreman, 141 Mo.App. 359, 125 S.W. 524; Schouler on Bailments, Sec. 23, p. 28. But if the bailor alleges that the bailee was negligent in his care of the property, it is likewise held, consistent with the law of negligence, that the burden of proving negligence is upon him who alleges it. Stanard Milling Co. v. White Line Central Transit Co., supra; Freeman v. Foreman, supra. Where the bailor alleges specific negligence on the part of the bailee he will, of course, be required to prove it. Bommer v. Stedelin, Mo.App., 237 S.W.2d 225. However, if the bailor charges negligence on the part of the bailee in general terms, proof of loss or damage to the property raises a presumption of negligence under the res ipsa loquitur doctrine, and the burden of going forward with the evidence to rebut the inference of negligence shifts to the bailee. Bommer v. Stedelin, supra; Oliver Cadillac Co. v. Rosenberg, supra.

■ From his findings of fact and conclusions of law it appears that the trial court was of the opinion that the burden of proof as to defendant's want of ordinary care was on the plaintiff. Since plaintiff's cause of action was founded on breach of the contract of bailment, not on

negligence, it follows from what has been said that this was an erroneous view of the law, Stanard Milling Co. v. White Line Central Transit Co., supra; Freeman v. Foreman, supra. Furthermore, had this been a case based on general negligence, plaintiff sustained his burden of proof by his evidence of the bailment and defendant's failure to return his car, and the burden of going forward with the evidence to excuse the failure to redeliver then shifted to the defendant. Bommer v. Stedelin, supra. Apparently the trial court also concluded that the defendant's evidence was sufficient to exculpate it. With that conclusion we cannot agree. There was no evidence of any kind offered by the defendant to account for the disappearance of plaintiff's car. All that appeared from its evidence was that the automobile was not on the lot when plaintiff demanded it. Who removed it, how, or for what purpose was not shown. Defendant did not even negative the possibility that it might have been removed by one of its own employees. It appears that defendant sought to rely on the inference that the automobile had been stolen from the lot by a thief. But other inferences, equally consistent with the facts of the case, may be drawn. The automobile may have been delivered to a third party by mistake, or as the result of a fraud or trick, in either of which event the defendant would be liable for its loss. Motors Ins. Corp. v. Union Market Garage, Mo.App., 207 S.W. 2d 836. Or one of the defendant's employees may have taken it from the lot for his own use, in which case the defendant would likewise be responsible. Joseph v. Mutual Garage Co., Mo.App., 270 S.W.2d 137. The blunt truth of the matter is that the defendant failed completely to account for the disappearance of the car.

■ Furthermore, even if it were assumed that the car had been stolen that fact, standing alone, would not absolve defendant. It was also incumbent on it to show that it had exercised ordinary care to safeguard the automobile from being

stolen. Halyard v. Dechelman, 29 Mo. 459; Story on Bailments, supra. The defendant's own evidence showed that it was far from free of negligence. For its own convenience in jockeying cars, it left the keys in the vehicles, or, as in plaintiff's case, the ignition switch in a starting position. Of even graver importance, automobiles were left in a position on the lot from which they could be readily started and driven out the unguarded exit on to Kingshighway. For at least an hour and a half before plaintiff sought his car on what, according to Tillard, was a busy, crowded Saturday night, Tillard was the only attendant on duty. At times, according to his own testimony, it was necessary for him to go into the alley or area-way, in back of the apartment building, from which position he could not observe most of the lot. It is obvious that during one of Tillard's absences from the lot it would have been an easy matter for a car thief to have stolen a car parked in front of the Kingshighway exit. Defendant's own evidence, we believe, demonstrated that it failed to exercise the care and diligence which the law required of it as bailee.

■■■ Plaintiff's evidence was that in his opinion the fair market value of his automobile was between $1400 and $1500. Plaintiff also testified that he was without the use of a car for 23 days, but no evidence was introduced as to the nature and extent of the damage he may have suffered thereby.

For the reasons stated, it is the recommendation of the Commissioner that the judgment be reversed and the cause be remanded with directions to enter judgment in favor of plaintiff and against defendant for $1500, and costs.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and the cause remanded with directions.

ANDERSON, P. J., WOLFE, J., and HARRY A. HALL, Special Judge, concur.