**BILL SCHOLMAN, Plaintiff-Respondent,**

v.

**JOPLIN AUTOMOBILE AUCTION COMPA-NY, a corporation, Defendant-Appellant.**

No. 8796.

Springfield Court of Appeals.

Missouri.

March 4, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied March 21, 1969.

Garland Douglas, Douglas & Douglas, Neosho, for defendant-appellant.

Ben J. Martin, Springfield, for plaintiff-respondent.

HOGAN, Presiding Judge.

Plaintiff brought this action against the defendant, Joplin Automobile Auction Company, a corporation, for failure to redeliver an automobile which plaintiff had placed with the defendant for sale. Trial to the court without a jury resulted in a judgment for the plaintiff in the amount of $2,700. The defendant has appealed.

The defendant, as its name indicates, engaged in the automobile auction business. It conducted sales, apparently one night a week, on a fenced lot in or near Joplin, Missouri. The defendant employed "about 30" people, of whom 23 or 24 were part-time employees, "for the one night." On the evening in question, 126 automobiles had been consigned to the defendant for sale.

Defendant's operations were described by a Mr. Earl Howard, who stated that he was the "principal owner of the stock" in the corporation. When an automobile was received for sale, one of defendant's employees obtained certain identifying information concerning the car from the owner, and the vehicle was then assigned a number and placed on the lot by the defendant's employees. Mr. Howard stated that "[w]e don't have any security arrangement or a police department," but he also said that defendant's employees were " * * * on instruction as to the care and custody of cars." He did not explain what that "instruction" was. Mr. Howard laid considerable emphasis on the fact that the auctions were conducted only for dealers; they were not open to the general public. However, the prospective buyers were not checked at the gate, but only "in the office if they [did] business, buying or selling." Keys were left in the automobiles as they stood on the lot before being taken to the auction block. Prospective buyers were allowed to try the automobiles out by driving them on the street, if they wished. They could exercise this "ride and drive" privilege either before or after a purchase was made, and there was no watchman at the gate during the auction. Mr. Howard testified that over a period of 10 years, the defendant had sustained only three losses by theft.

At the time here involved, the plaintiff was an automobile dealer. At the solicitation of a Mr. Fuller, plaintiff delivered an automobile to the defendant's premises late in the afternoon of June 18, 1965. When plaintiff arrived at the defendant's lot he delivered his automobile to one of the defendant's employees, and it was taken and parked on the defendant's lot. The keys were left in the car. Plaintiff then went "down town."

Plaintiff returned to the auction lot about 7:30 p. m. His car was then "parked in the same place." Plaintiff then "[w]ent inside and watched the auction for a while

and just generally milled around." About 10:00 p. m., plaintiff "looked up" and saw that his automobile was missing. A search was made, but the automobile could not be found. Finally the Joplin police were called, and the automobile was reported as stolen. At the time of trial on January 23, 1968, the automobile had not been located. Mr. Schloman testified that when he left his automobile for auction, he paid a $2 registration fee in cash, and that neither the registration fee nor the automobile had been returned. The title to the automobile had been assigned to Mr. Schloman, but was not reassigned to the defendant.

■ The parties have briefed a rather technical point concerning the nature of their legal relationship, but it is unnecessary to discuss this peripheral issue in detail. As far as the records and exhibits before us show, there was no special agreement between the parties; the automobile was delivered into the defendant's actual or constructive possession to be sold, and the defendant's obligation was to sell the car and account for the proceeds, or return it to the plaintiff. The transaction between the parties was a bailment for sale. Nagels v. Christy, Mo., 330 S.W.2d 754, 757; 8 Am.Jur.2d, Bailments, § 34, pp. 942–943. As such, it was a bailment for the mutual benefit of the parties. 4 Williston, Contracts, §§ 1035, 1040, pp. 2892, 2904 (Rev.ed.1936). The defendant was required to exercise ordinary care to safeguard the plaintiff's automobile, Nuell v. Forty-North Corporation, Mo.App., 358 S. W.2d 70, 75 [5]; McKnight v. Batrick, Mo. App., 49 S.W.2d 277, 280 [1–4], but the term "ordinary care" is a relative term; its exercise requires such precaution as is commensurate with the dangers reasonably to be anticipated under the circumstances. De Mariano v. St. Louis Public Service Company, Mo., 340 S.W.2d 735, 743 [9]; Stephens v. Kansas City Gas Co., 354 Mo. 835, 853, 191 S.W.2d 601, 609 [21]. We are not aided materially by a mere definition of the defendant's status, nor by a statement of the degree of care required of the defendant as a bailee for sale.

The real and substantive questions on this appeal are two: First, does the evidence, taken as a whole, permit the inference that defendant was negligent? Second, was the plaintiff guilty of contributory negligence so as to bar his recovery? Consideration of these two questions calls for a restatement of some elementary principles along the way.

■ The plaintiff pleaded that the automobile was lost because "defendant carelessly and negligently allowed the plaintiff's automobile * * * to be removed, stolen, or otherwise taken away from the premises of the defendant." No particular act or omission is specified as the legal cause of plaintiff's injury. The allegation quoted is an averment of general, rather than specific negligence. Boulos v. Kansas City Public Service Co., 359 Mo. 763, 769–772, 223 S.W.2d 446, 449–451 [2, 3] [4]; Bommer v. Stedelin, Mo.App., 237 S.W.2d 225, 228–229 [2] [3, 4]. The plaintiff made proof of delivery of the automobile into the defendant's actual or constructive possession, and loss of the bailed property is conceded. Proof of delivery to the defendant as a bailee for sale and proof of loss of the automobile created an inference of negligence on the defendant's part, and the burden of going forward with the evidence to rebut this inference shifted to the defendant. Nuell v. Forty-North Corporation, supra, 358 S.W.2d at 76 [7]; Bommer v. Stedelin, supra, 237 S.W.2d at 227 [1]; 9 Wigmore, Evidence, § 2508, p. 375 (3d ed. 1940).

■ There are divergent views concerning the showing which must be made to rebut this inference when the bailed chattel is destroyed by fire or lost by theft. 8 Am.Jur.2d, Bailments, §§ 319–321, pp. 1207–1212. We need not consider that question abstractly, however, for there is very little, if any evidence in the record before us which tends to rebut this inference and exculpate the defendant. The existence of

the bailment is admitted. The defendant took the plaintiff's automobile in possession. It was placed on a lot along with 125 other vehicles. The key was left in it. An undetermined number of prospective buyers assembled for the auction, not all of them known to the defendant. Any prospective buyer had the privilege of driving a car off the lot, which was enclosed by a fence (of undetermined height) but was unguarded. At some point during the course of the sale, the automobile was wrongfully taken. The defendant was completely unable to account for the automobile; indeed it appears that Mr. Howard—defendant's only witness—had no distinct recollection of the particular sale, and that his testimony consisted largely of evidence concerning the defendant's usual or habitual method of doing business. It would be idle to speculate on the methods by which the defendant might have offset or rebutted the inference of negligence created by the plaintiff's evidence; the only explanation offered for the loss was that the vehicle was stolen. Proof of loss by theft was not in itself sufficient to exonerate the defendant. Nuell v. Forty-North Corporation, supra, 358 S.W.2d at 76–77 [9]; Central Mutual Insurance Company v. Whetstone, 249 Minn. 334, 81 N.W.2d 849, 851 [2]; Anno., 43 A.L.R.2d 403, § 5, p. 416 (1955).

■ The defendant's argument that the plaintiff was contributorily negligent, on the other hand, has considerable merit. It is well established that the bailor's contributory negligence is a defense to an action by the bailee for negligent loss of the bailed property,[1] and this includes the kind of contributory negligence which is sometimes called assumption of risk. Parker v. Union Ice & Salt Co., supra, 59 Kan. 626, 54 P. at 672; Van Zile, Bailments and

Carriers, pp. 179–180. On principle, we agree with the defendant that if the plaintiff, knowing and appreciating the risks, surrendered his property to a manifestly imprudent custodian, or permitted it to be stored in an obviously unsafe place while the sale was going on, he should not be permitted to recover. The plaintiff testified that he had done business with the defendant "[a]t least a couple of years off and on," and that on the occasion in question, his vehicle was handled "in the customary way you handled cars when you took them to the auction." Plaintiff's testimony indicates, but does not positively show, that he knew other dealers and employees of the auction drove the cars around while the sale was in progress. As we say, the defendant's argument that plaintiff assumed the risk of having his automobile stolen has merit, and had the point been more vigorously pursued at the trial, we think it might be well taken.

■ The difficulty with the argument is that it appears to be an afterthought. Though both assumption of risk and contributory negligence are defenses which must be affirmatively pleaded, Rule 55.10, V.A.M.R., the defendant pleaded neither, and while this is a court-tried case, we believe the plaintiff's recovery may not be denied upon the ground of his contributory negligence unless the contributory negligence appears as a matter of law from his own evidence. Shepard v. Harris, Mo., 329 S.W.2d 1, 6 [3]. On the record before us, we cannot quite say that the plaintiff's own evidence establishes his contributory negligence beyond a difference of reasonable minds.

■ As we have several times noted, this is a court-tried case, reviewable under the provisions of Rule 73.01(d), V.A.M.R., which provides that the judgment

1. Lee Tire & Rubber Company of State of New York v. Dormer, 48 Del. 578, 108 A.2d 168, 172 [12, 13]; Parker v. Union Ice & Salt Co., 59 Kan. 626, 54 P. 672, 673; Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 146 Neb. 47,

18 N.W.2d 551, 556 [8]; Osborn v. Cline, 263 N.Y. 434, 189 N.E. 483, 484 [3]; Van Zile, Bailments and Carriers, § 205, pp. 179–180 (2d ed. 1908); 8 C.J.S. Bailments § 46, p. 500.

shall not be set aside unless it is clearly erroneous. We have examined the record, and in our view the evidence permits the inference that the defendant was negligent, and does not compel a finding that the plaintiff was contributorily negligent. The judgment is affirmed.

STONE and TITUS, JJ., concur.