**WIRED MUSIC, INC., a corporation, Plaintiff-Appellant,**

v.

**Phil O'BRIEN, Individually, and O'Brien's Restaurant and Lounge, a corporation, Defendant-Respondent.**

No. 37356.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Aug. 30, 1977.

W. W. Sleater, Clayton, for plaintiff-appellant.

Lawrence O. Willbrand, St. Louis, for defendant-respondent.

STEWART, Judge.

This is an action upon a written contract whereby plaintiff was to furnish recorded music to O'Brien's Restaurant and Lounge, which was operated by defendant, B.O.S. Enterprises, Inc. Plaintiff sued the corporation and Phil O'Brien, the president of the corporation for breach of the agreement to pay for the services. The corporate defendant will be referred to as defendant. The individual defendant will be referred to as O'Brien. This cause originated in the magistrate court where plaintiff had judgment. Defendant appealed, and upon trial, the jury returned a verdict in favor of both defendants. As we read plaintiff's Points Relied On, they contend that the court erred: (1) in giving defendant's instruction concerning cancellation of the contract; (2) in failing to direct a verdict for plaintiff; and (3) in excluding documentary evidence.

█ In stating the facts, we review the evidence in the light most favorable to the prevailing party. *Schmid v. Langenberg*, 526 S.W.2d 940, 942[1] (Mo.App.1975).

Plaintiff, sometimes referred to as "Muzak," is in the business of furnishing musical programs to businesses on a 24 hour basis. The music is taped and transmitted by radio signal or by telephone line to its customers. Defendant had formerly subscribed to plaintiff's service, but after a trial period in 1967, discontinued the services and installed its own system. Defendant had executed a contract similar to the contract involved in this case. Defendant, at that time, advised plaintiff by telephone that it was not satisfied with the programming, and subsequently, the equipment was removed.

In late 1971, a new salesman for plaintiff made a call upon O'Brien and explained that their programming had been changed. The salesman wanted to furnish the service on a trial basis stating that "if [defendant] didn't like it, they'd take it out." The salesman delivered a contract in duplicate, dated November 5, 1971, which was left with Mr. O'Brien. Mr. O'Brien signed the contract, as president of the corporation. The salesman returned the following day, picked up both copies of the contract, and took them back to plaintiff for its signature.[1]

By the terms of the printed form contract, plaintiff agreed to furnish musical programs to the corporate defendant's restaurant for a period of five years at the rate of $29.51 per month. The contract provided that upon "default in any payment . . . the whole balance payable [under the contract] shall immediately become due and payable and Muzak or its agents shall have the right immediately without notice to enter the premises of the subscriber and to take possession and remove all Muzak equipment with or without due process of law and/or discontinue the service without any liability for damages arising therefrom and without relieving the subscriber of any moneys due or to become due under this Agreement." In addition, plaintiff would be entitled to recover any court costs and "reasonable attorneys fees."

---

1. O'Brien testified that "both were taken back to be resigned and then one (1) was supposed to be mailed back to me . . . ."

Also material to our consideration, the contract provided, by typewritten addition, that the "subscriber [the corporate defendant] may terminate [the] . . . agreement at any time prior to January 5, 1972, by prior written notice sent via registered mail . . . ."

Plaintiff installed the necessary equipment and commenced furnishing the musical program on November 12, 1971. Plaintiff billed defendant, on November 30, 1971, for service for one-half month.

Mr. O'Brien was not satisfied with the type of music that was being played. A few days after Christmas, he called plaintiff's place of business and asked to speak with Mr. Deason, the manager. Mr. Deason was not in, and O'Brien told the girl who answered the telephone that he was dissatisfied with the music and wanted the system removed. "She said she would take care of it." Plaintiff did not remove the equipment. Mr. O'Brien called again after the New Year Holiday, but the manager was not in. Mr. O'Brien reached Mr. Deason on January 6, at which time Mr. Deason told him that it was too late to cancel. Mr. Deason also told O'Brien that the girl should have told him that cancellation should have been in writing. He further advised Mr. O'Brien that he would send him defendant's copy of the contract.

Mr. Deason, by letter dated January 19, 1972, sent defendant its copy of the contract.[2]

Defendant made no payment to plaintiff. Plaintiff's attorney sent a collection letter dated March 31, 1972, billing defendant $1,770.60, the entire cost of the five year contract, and an additional $590.20, as attorney fees.

There is evidence that plaintiff continued to provide services to defendant. On at least two occasions, there were interruptions of service. Plaintiff made the repairs necessary to put the equipment back in service.

We consider first plaintiff's contention that it was error to give Instruction 4, which was submitted by defendants. The instruction reads:

Your verdict must be for the defendants if you believe:

First, that prior to January 5, 1972, defendant Phil O'Brien orally informed the plaintiff to terminate the Muzak Program Service Agreement, and

Second, the plaintiff accepted said notice to termination, and

Third, said acceptance waived the contractual provision that said notice to termination be in writing.

■ Initially plaintiff complains that the defense presented was not pleaded. It is to be remembered that this case was tried in the circuit court as an appeal from the magistrate court. It was not incumbent upon defendants to formally plead any affirmative defenses in the magistrate court, or in the circuit court upon appeal. *Schroeder v. Drewer*, 113 S.W.2d 1045, 1047–48[5] (Mo.App.1938). Rule 41.01, V.A.M.R., providing that Rule 55 V.A.M.R., is not applicable to cases on appeal from the magistrate court, confirms this principle.

■ Plaintiff next contends the court erred in submitting the instruction because: (1) it did not require the jury to find that the person, to whom Mr. O'Brien spoke on the telephone, was an agent empowered to orally waive the provision relating to notice of termination in writing; and (2) there was no evidence of record upon which to base such a finding. We agree.

■ While defendants were not required to plead their affirmative defenses, the burden of proof with respect to such defenses is upon defendants. *Rimer v. Hubbert*, 439 S.W.2d 5, 8[6] (Mo.App.1969). It has long been held that the existence of an agency is a question for the jury. *Middleton v. Kansas City, St. Joseph and Coun-*

2. The letter read:
   "As we discussed on the phone, here is a copy of your MUZAK Program Service Agreement.

   I have asked Mr. Gampp to be in touch with you to talk over the situation."

*cil Bluffs Railroad*, 62 Mo. 579, 581 (1876). In this case, defendants did not offer any evidence concerning the identity of the girl who answered the telephone, nor any evidence of her authority to waive any provisions of the contract. There was some evidence of authority implied through course of conduct in the past, but this was not pursued and is too vague to rise to the stature of substantial evidence. *See Dudley v. Dumont*, 526 S.W.2d 839, 844[6–7] (Mo.App.1975). Plaintiff did not admit that the girl, to whom O'Brien spoke with respect to cancellation, was an agent with authority to modify the contract and agree to cancellation. Whether this person was such an agent, was a controverted fact issue that would require a specific finding by the jury. *Middleton v. Kansas City, St. Joseph and Council Bluffs Railroad*, 62 Mo. at 581. Instruction 4 did not require such a finding, and in this respect, the instruction was erroneous. In this case while one may infer that a person answering a telephone at a business establishment is an employee of that establishment, we can not infer that such person has authority to contract or to waive any of the terms of existing contracts. There is no evidence that this person was an agent of plaintiff for the purposes for which defendants contended. An instruction, which submits an issue which is not supported by the evidence is erroneous. *Dickey Co. v. Kanan*, 537 S.W.2d 430, 434[7] (Mo.App.1976).

■ Plaintiff urges that the court erred in failing to grant plaintiff's motion for direct verdict at the close of the evidence. It has been said that "[R]arely is a court in a position to direct a verdict in favor of one who has the burden of proof and never where the issues must be decided upon parol evidence . . ." *Auffenberg v. Hafley*, 457 S.W.2d 929, 934[7] (Mo.App. 1970). In this case many issues remain open for consideration. While plaintiff contends that the damages are set by the contract, we note that the contract provided for reasonable attorney's fees. There was evidence upon this issue, and the defendants did not concede that the amount to which plaintiff's counsel testified was rea-

sonable. The issue of the individual liability of O'Brien remains a live issue in view of our recent case of *Wired Music Inc. v. Great River Steamboat Co.*, 554 S.W.2d 466 (Saint Louis Dist. Mo.App.1977). There appears to be a question of the amount of credits due to defendant because of interruptions of service in accordance with paragraph 6 of the contract. Thus, we must reverse and remand this cause for a new trial.

■ We will undertake to discuss one other issue that may again be presented to the trial court. Plaintiff contends that the court erroneously excluded its Exhibit 5, a letter, dated January 18, 1972, written by plaintiff's salesman to O'Brien. It reads:

"It is a pleasure seeing you again, and I certainly am glad to hear you have no complaints about the Muzak Service."

Plaintiff argues that the letter was admissible under The Uniform Business Records as Evidence Law, §§ 490.670 and 490.-680, RSMo.1969. No effort was made to qualify this document as having been "made in the regular course of business," nor do we perceive how it could qualify. *Rodenberg v. Nickels*, 357 S.W.2d 551, 556[8] (Mo.App.1962). Even if this letter could have qualified as a business record, it was properly excluded as self serving, and thus, inadmissible. *Hussey v. Robison*, 285 S.W.2d 603, 608 (Mo.1955).

For the reasons herein the judgment of the trial court is reversed and the cause is remanded for a new trial.

McMILLIAN P. J., and RENDLEN, J., concur.